UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

MICHAEL FISHER,

               Plaintiff,

v.

RANDEE REWERTS et al.,

               Defendants.

_____/

Case No. 1:24-cv-917

Honorable Ray Kent

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff may proceed *in forma pauperis* in this action. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 1, PageID.24.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under

longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will partially dismiss Plaintiff's complaint for failure to state a claim for the reasons detailed below.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The events about which he complains, however, occurred at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. Plaintiff names thirty-two Defendants in this case and states that he is suing them in their personal and official capacities. (Compl., ECF No. 1, PageID.2–7.) Defendants include Warden Randee Rewerts, Inspector Unknown Williams, Resident Unit

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Manager Unknown Blair, Assistant Deputy Warden Unknown Nevins, Grievance Coordinator Unknown London, Hearing Investigator K. Smith, Assistant Deputy Warden Ryan Bowne, and Sergeants Unknown Fears, Unknown Wight, Unknown Leonard, Unknown Miller, Unknown Walrath, Unknown Schutt, Unknown Fidler, and Unknown Schultz. Plaintiff also sues Resident Unit Manager Unknown Ward, Corrections Officers T. Kaputska, Unknown Cook, Unknown Rydahl, Unknown Collins, Unknown Party #1 3rd Shift Corrections Officers in Segregation, Unknown Miller, Unknown James, Unknown Gaiter, and Unknown Rayburn, Nurse Unknown Dean, Unknown Party #2 Medical Staff, Grievance Coordinator L. Beecher, Mental Health Counselor Patricia Howland, Assistant Resident Unit Supervisor Unknown Allen, Doctor Stephanie Weist, and Grievance Manager Richard Russell. (*Id.*)

In his complaint, Plaintiff alleges that on May 26, 2022, corrections officers responded to a fight between Plaintiff and his cellmate. (*Id.*, PageID.8.) Plaintiff states that prior to this incident, he and his cellmate had requested to be separated from one another. (*Id.*, PageID.13.) Plaintiff also states that he is deaf/hard of hearing. (*Id.*, PageID.15.) Plaintiff states that Defendants Cook, Rydahl, and several other corrections responded and ordered Plaintiff to get on the floor. Plaintiff complied and was face down on the floor when officers entered the cell. Plaintiff states that as he was lying on the wet floor, he was tased in the head by Defendant Cook, was handcuffed, and a clear shield was placed over his body. (*Id.*, PageID.8.) Plaintiff states that officers jumped on and trampled his body while he was pinned under the shield. Plaintiff also claims that one officer sprayed him directly in the face with pepper spray while he was helpless and compliant underneath the shield. (*Id.*) Plaintiff states that Defendants Walrath, Cook, and Rayburn were present during the May 26, 2022, assault on him by corrections officers. (*Id.*, PageID.21.) Plaintiff alleges that a

4

critical incident report was not filed, but that he filed a grievance as soon as he was able after the incident. (*Id.*)

On March 27, 2022, at approximately 1:45 to 2:00 a.m., Defendants Collins and James and at least three other corrections officers came to Plaintiff's cell in riot gear and sprayed pepper spray through Plaintiff's food slot. (*Id.*, PageID.8–9.) Defendants told Plaintiff to allow himself to be detained and began using force against him, beating him and placing him under a shield. Once under the shield, one of the officers who was in riot gear placed a large can of pepper spray directly in Plaintiff's face and released a burst of spray which lasted at least five seconds. (*Id.*, PageID.9.)

A critical incident report was not completed, and Plaintiff was not seen by medical. (*Id.*, PageID.9.) Plaintiff was placed in a segregation cell without a mattress or bedding for days, before he was finally given his mattress. (*Id.*) That night, Plaintiff told Defendants Collins and Wight that he was suffering from chest pains, but both refused to contact medical on Plaintiff's behalf for two days. (*Id.*, PageID.21.)

Plaintiff was kept in segregation from May 26, 2022, until September, when he was transferred to Saginaw. (*Id.*, PageID.9.) During this time, Plaintiff filed grievances and spoke to staff. Plaintiff also requested protection from the Security Classification Committee (SCC), which included Defendants Blair, Bowne, and Kaputsa, on June 2, 2022. (*Id.*) During the exchange, Plaintiff explained that he had been told not to come out of segregation by gang members. In response, Defendant Blair told Plaintiff that he was not getting protection and handed Plaintiff a piece of paper that said, "GP Level IV." (*Id.*) Plaintiff claims that Defendants Corrections Officer Miller, Gaiter, Kaputska, and Blair threatened to "feed" him to gang members. (*Id.*, PageID.22.) However, Plaintiff was kept in segregation by Defendants Blair and Bowne. Plaintiff complains that no one advocated for him during the SCC meeting. (*Id.*)

Plaintiff alleges that on June 28, 2022, Defendant Kaputska stole documents, books, magazines, and hearing aids from his cell after Plaintiff had been removed from his cell in handcuffs. (*Id.*, PageID.13, 17.) Plaintiff states that several grievances and an SCC form were also taken. (*Id.*) Plaintiff states that Defendant Kaputska eventually admitted losing Plaintiff's legal materials and hearing aids. (*Id.*, PageID.19.) The hearing aids were replaced but the documents were not. (*Id.*) Plaintiff filed grievances regarding his documents, but they were rejected or not answered at all by Defendants Beecher and Nevins. Plaintiff also gave carbon copies of his complaints directly to Defendant Williams, but received no response. (*Id.*)

Plaintiff filed a grievance, which was denied at each step. (*Id.*, PageID.9–10.) Plaintiff states that prisoners in Carson City were not to be kept in segregation for more than 10 days and that he was denied sanction breaks in June, July, and August in violation of MDOC policy by Defendants Kaputska and Gaiter. (*Id.*, PageID.10, 17.) Plaintiff spoke with Defendants Howland, Nevins, Bowne, Blair, Ward, Leonard, Wight, Schutt, and William, and wrote kites to Defendants Blair, Allen, Sergeant Miller, and Kaputska. (*Id.*) Plaintiff states that he wrote grievances asserting that he had been deprived of his right to an administrative hearing prior to being classified to segregation. (*Id.*, PageID.10.)

On August 6, 2022, Plaintiff filed a grievance stating that the ventilation system did not work the entire time that Plaintiff was confined to segregation. (*Id.*, PageID.19.) Plaintiff also states that the outside recreation cages were unsanitary and were filled with feces and that he was subjected to "ongoing abuse" from the time he entered the segregation unit. (*Id.*, PageID.23.)

On August 17, 2022, Defendant Ward acknowledged that policy was being violated by Plaintiff's extended stay in segregation but stated that there was nothing he could do about it, it was up to Lansing. (*Id.*, PageID.10.) Finally, after four months of pleading his case, on August 25,

2022, Plaintiff was placed on protection. (*Id.*) Plaintiff was kept in segregation for nearly thirty days longer before he was transferred to Saginaw. (*Id.*) Plaintiff states that Defendants Blair, Bowne, and Rewerts were all aware of the violation of policy but did nothing to correct the matter. (*Id.*) On September 13, 2022, Defendant Rewerts denied Plaintiff's step II grievance on the denial of sanction breaks. Plaintiff's step III grievance was also denied. (*Id.*, PageID.11.)

Plaintiff states that Defendant Blair collects the grievances, examines them, and decides whether to forward them to the grievance coordinator or to discard them. (*Id.*) Plaintiff alleges that Defendant Blair falsified a hearing report by stating that Plaintiff had pleaded guilty to two class II misconducts and waived his right to a hearing. (*Id.*) Defendant Blair conducted the hearing without Plaintiff's presence and sentenced Plaintiff to two terms of 10 days loss of privileges. (*Id.*, PageID.11–12.) Plaintiff subsequently spoke to Defendant Smith and received the paperwork necessary to file an appeal, which he filled out and submitted. (*Id.*, PageID.12.) Plaintiff never received a response to his appeal. (*Id.*) Plaintiff could not go outside to exercise or use the phone while he was serving his loss of privileges. (*Id.*) Plaintiff complains that Defendant Smith did nothing to investigate Defendant Blair, which violated Plaintiff's due process rights. (*Id.*, PageID.20.)

Plaintiff claims to have documents which prove that staff at Carson City regularly ignore MDOC policy. (*Id.*, PageID.13.) Plaintiff claims to have been injured more than once by corrections officers and fears for his life. Plaintiff states that he has received multiple misconducts for "staff assaults" which have been falsified after incidents in which he was beaten by staff. (*Id.*) Plaintiff asserts that he informed the Ombudsman's office of his mistreatment at Carson City, but Defendant Blair refused to allow Plaintiff to speak to the Ombudsman's office when they tried to contact him. (*Id.*, PageID.16.)

Plaintiff has also filed what he labels as an amended complaint (ECF No. 4), but is actually a supplemental complaint which merely seeks to add additional allegations to the original complaint. Under Fed. R. Civ. P. 15(a), a party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served. Defendants have not been served at this point in the litigation. Therefore, the Court will grant Plaintiff leave to supplement his complaint and his amendments will be deemed to have been filed *instanter*.

In Plaintiff's supplemental complaint, he reasserts that allegations set forth in his original complaint and adds that on June 28, 2022, Defendant Kaputska told Plaintiff that Defendant Blair wished to speak to him. (ECF No. 4, PageID.53.) Defendant Kaputska then placed Plaintiff in cuffs and he and Defendant Wight took Plaintiff to 500 Unit, which is a general population unit. (*Id.*) Defendant Kaputska placed Plaintiff in cell 22. Plaintiff protested that he feared for his life and required protection, and Defendant Kaputska slammed the door shut saying that it was not his problem. (*Id.*) When the nurse came to give Plaintiff his medications, Plaintiff reported that he was suicidal and was taken back to segregation unit cell 2. (*Id.*) Plaintiff states that Defendants referred to cell 22 in the general population as a temporary segregation overflow cell in an attempt to cover up Defendants' violation of policy. (*Id.*) Plaintiff also states that he was punished multiple times for the fight on May 26, 2022. (*Id.*)

With regard to the use of force by Defendants on May 26, 2022, Plaintiff alleges that he was already face down on the floor when Defendants entered and that Defendants Cook, Rydahl, Rayburn, and Walrath placed the plastic riot shield on him. (*Id.*, PageID.55.) Plaintiff states that Defendant Cook shot him in the head with a taser, that the pepper spray was administered directly to his face with a crowd disbursement extinguisher meant for a crowd of prisoners, and that all of the Defendants present stomped on top of the shield while Plaintiff was pinned underneath. (*Id.*)

Plaintiff seeks damages and injunctive relief.

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

9

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Due Process

#### 1.    Class II misconducts

Plaintiff asserts that Defendant Blair violated his due process rights when Blair falsified class II misconduct reports by saying that Plaintiff had pleaded guilty and had waived his right to a hearing. Plaintiff also claims that Defendant Smith failed to properly investigate Plaintiff's appeals. Plaintiff also asserts in conclusory fashion that Defendant Fears was involved in a hearing on a false misconduct on August 1, 2022. (ECF No. 1, PageID.17.)

To the extent that Plaintiff is seeking to assert a due process claim related to the Class-II misconduct tickets, such a claim lacks merit. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 486–87 (1995).

First, no matter what happened with respect to any misconduct ticket, the duration of Plaintiff's sentence would not change. Plaintiff is serving a sentence of 3 to 5 years for the crime of unlawfully driving away an automobile. *See* MDOC Offender Tracking Information System, https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber= 669166 (last visited Feb. 27, 2025). Although there are incentives for serving time without misconducts, those incentives do not impact the duration of the sentence under *Sandin*.

In general, the MDOC no longer rewards prisoners for serving time "misconduct free." Instead, prisoners convicted of crimes committed on or after December 15, 1998, for a particular list of crimes, and on or after December 15, 2000, for all other crimes, are given "disciplinary

time" when they are found guilty of a major misconduct. *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011; Mich. Comp. Laws § 800.34. Plaintiff is incarcerated for a crime he committed on May 10, 2021. Therefore, he is subject to disciplinary time with regard to his indeterminate sentence. Mich. Comp. Laws § 800.34.

Disciplinary time accrues when a prisoner is found guilty of a major misconduct. A prisoner's accumulated disciplinary time is submitted to the parole board for consideration at parole reviews or interviews. The Sixth Circuit has concluded that "disciplinary time" never impacts the duration of a sentence in the sense contemplated by *Sandin*. *Nali v. Ekman*, 355 F. App'x 909, 912 (6th Cir. 2009).

Second, the sanctions for a disciplinary finding of guilt would not rise to the level of atypical and significant hardships. Under MDOC Policy Directive 03.3.105, Attachment D, the maximum sanctions for a Class-I misconduct conviction are as follows: 10 days of punitive segregation for each violation, but not to exceed 20 days for violations arising out of a single incident; 30 days of toplock (but not to be combined with punitive segregation); 30 days of loss-of-privileges sanctions, or 60 days maximum for multiple violations arising out of a single incident; and restitution. The sanctions for Class-II and Class-III misconducts are similar, but with shorter maximum durations.

The most significant sanction and, therefore, hardship, is placement in segregation. The Supreme Court has held that placement in segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will

consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th. Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484. Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph*, 410 F. App'x at 868 (61 days in segregation is not atypical and significant). Lesser sanctions of toplock or loss of privileges would certainly be no worse than segregation. Put simply, any penalty Plaintiff might have faced because of his misconduct convictions would not rise to the level of an atypical and significant hardship.

Accordingly, because Plaintiff has failed to identify a liberty interest impacted by any misconduct proceedings, the Court finds that Plaintiff fails to state a plausible Fourteenth Amendment procedural due process claim against Defendants Blair, Smith, and Fears in relation to his Class II misconduct tickets.

### 2.    Confinement in segregation

Plaintiff also asserts that he was kept in segregation longer than 10 days in a facility that was not equipped for long-term segregation in violation of MDOC policy. Plaintiff states that Defendants Kaputska, Gaiter, Howland, Nevins, Bowne, Blair, Ward, Leonard, Wight, Schutt, Williams, Rewerts, Allen, and Sergeant Miller were all responsible for this violation.

The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin*, 515 U.S. at 484, the Court set forth the standard for determining when a prisoner's loss of liberty implicates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the

protections of due process only when a deprivation "will inevitably affect the duration of his sentence" or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 486-87; *see also Jones v. Baker,* 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown,* 62 F.3d 789, 790-91 (6th Cir. 1995).

Confinement in administrative segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983) (superseded by statute on other grounds). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th. Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin,* 515 U.S. at 484-86. Similarly, the Sixth Circuit has held that mere placement in administrative segregation, and placement for a relatively short period of time, do not require the protections of due process. *Rimmer-Bey,* 62 F.3d at 790–91; *see Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010) (61 days in segregation is not atypical and significant). The Sixth Circuit has also held, in specific circumstances, that confinement in segregation for a relatively long period of time does not implicate a liberty interest. *See, e.g.*, *Baker,* 155 F.3d at 812–23 (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke,* 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). *But cf. Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty

interest); *Harden-Bey,* 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, *i.e.*, three years without an explanation from prison officials, implicates a liberty interest); *Harris v. Caruso,* 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest).

Even where a liberty interest is shown, the due process claim "is not complete unless and until the State fails to provide due process." *Zinermon v. Burch,* 494 U.S. 113, 126 (1990). The Supreme Court has indicated that "[p]rison officials must engage in some sort of periodic review of the confinement of . . . inmates [in segregation]." *Hewitt,* 459 U.S. at 477 n.9. "This review will not necessarily require that prison officials permit the submission of any additional evidence or statements." *Id.* However, the decision to continue confinement must be supported by "some evidence." *Superintendent v. Hill,* 472 U.S. 445, 454 (1985). "This requirement balances the procedural rights of prisoner against the need of prison officials to have freedom to operate their facilities on a day-to-day basis." *Harris,* 465 F. App'x at 484. In short, where an inmate's confinement in segregation implicates a liberty interest, he is entitled to a "periodic review of his confinement, supported by some evidence or indicia of reliability." *Id.* at 485; *see also Selby*, 734 F.3d at 559-60 (holding that the mere formality of holding reviews is not sufficient; whether a given process is meaningful and adequate is a question of fact).

In this case, Plaintiff states that he was kept in segregation for approximately four months until he was finally transferred to another facility. Such a time period is significantly less than the several years or more at issue in *Selby*, *Harris*, and *Harden-Bey*. Moreover, Plaintiff's assertion that the ventilation system did not work the entire time that Plaintiff was confined to segregation, that the outside recreation cages were unsanitary and were filled with feces, that he was denied sanction breaks on two occasions, and that he was subjected to "ongoing abuse" from the time he

14

entered the segregation unit are vague and conclusory. Plaintiff does not allege facts showing that conditions in segregation caused him to suffer any adverse physical symptoms or describe what conduct constituted "abuse." Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Therefore, the Court concludes that Plaintiff fails to state a due process claim based on his confinement in segregation.

### 3.    Deprivation of property

Plaintiff claims that Defendant Kaputska stole his property, including documents and hearing aids. Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. In fact, Plaintiff concedes that his hearing aids were eventually returned to him. Moreover, numerous state post-deprivation remedies are available to

him. The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Accordingly, Plaintiff's due process claim related to the seizure of his property by Defendant Kaputska will be dismissed.

### 4.    Interference with grievances and complaints

To the extent that Plaintiff is claiming that various Defendants violated his due process rights when they failed to respond to his grievances and complaints, such claims lack merit. Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive him of due process.

### B.    Eighth Amendment

Plaintiff asserts that his Eighth Amendment rights were violated by various Defendants during his stay at DRF. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46

(1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a

substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

### 1.    Excessive force

Plaintiff claims that Defendants Cook, Rydahl, Walrath, and Rayburn subjected him to excessive force on May 26, 2022, when they responded to a fight between Plaintiff and his cell mate. Plaintiff also asserts that Defendants Collins and James subjected him to excessive force on May 27, 2022.

The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *See Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981); *see also Trop v. Dulles*, 356 U.S. 86, 101 (1958). The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346. Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.*

But not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson*, 503 U.S. at 9 (holding that "[n]ot every push or shove . . . violates a prisoner's constitutional rights") (internal quotations omitted). On occasion, "[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law." *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002) (citing *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)), *quoted in Cordell v. McKinney*, 759 F.3d 573, 580–81 (6th Cir. 2014). Prison officials nonetheless violate the Eighth

Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (internal quotation marks omitted); *Bailey v. Golladay*, 421 F. App'x. 579, 582 (6th Cir. 2011).

There is an objective component and a subjective component to an Eighth Amendment claim. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams*, 631 F.3d at 383. Courts ask "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9 (internal quotations omitted). The objective component requires a "contextual" investigation, one that is "responsive to 'contemporary standards of decency.'" *Id.* at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9. "Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Id.*

In this case, Plaintiff alleges that on May 26, 2022, he was prostrate on the ground when Defendants Cook, Rydahl, Walrath, and Rayburn entered his cell and placed a shield over his body. Defendants then proceeded to tase him, spray him with pepper spray, and stomp on him. Plaintiff also alleges that on May 27, 2022, Defendants Collins and James (along with at least three other unnamed, non-party corrections officers) came to Plaintiff's cell in riot gear and sprayed pepper spray through Plaintiff's food slot, after which they beat Plaintiff and placed him under a shield. Once under the shield, one of the officers placed a large can of pepper spray directly in Plaintiff's face and released a burst of spray which lasted at least five seconds.

The Court concludes that at this point in the litigation, Plaintiff has stated sufficient facts to support an excessive force claim against Defendants Cook, Rydahl, Walrath, Rayburn, Collins, and James.

### 2.    Denial of medical care

Plaintiff claims that he was not seen by medical following the incident on May 26, 2022, and that he complained of chest pain and asked to receive medical care, but Defendants Collins and Wight refused to contact medical care for two days. A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000).

20

The Court concludes that although Plaintiff's claim that Defendants Collins and Wight denied him medical care is somewhat conclusory, at this point in the litigation, it is sufficient to avoid dismissal.

### 3.    Denial of requests for protection

Finally, Plaintiff claims that Defendants Blair, Bowne, and Kaputska were members of the SCC and refused Plaintiff's request for protective custody. Plaintiff also asserts that Defendants , Corrections Officer Miller, Gaiter, Kaputska, and Blair threatened to "feed" him to gang members on June 2, 2022.

In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, directing that they may not use excessive physical force against prisoners and must also "'take reasonable measures to guarantee the safety of the inmates.'" *Farmer*, 511 U.S. at 832 (quoting *Hudson*, 468 U.S. at 526–27). To establish liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, a plaintiff must show that the prison official acted with "deliberate indifference" to a substantial risk of serious harm facing the plaintiff. *Farmer,* 511 U.S. at 834; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Bishop v. Hackel*, 636 F.3d 757, 766–67 (6th Cir. 2011); *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *Taylor v. Mich. Dep't of Corr.* 69 F.3d 76, 79 (6th Cir. 1995). Deliberate indifference is a higher standard than negligence and requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Bishop*, 636 F.3d at 766–67.

Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer*, 511 U.S. at 833. Thus, prison staff are obliged "to take reasonable measures

to guarantee the safety of the inmates" in their care. *Hudson*, 468 U.S. at 526–27. In particular, because officials have "stripped [prisoners] of virtually every means of self-protection[,]" "officials have a duty to protect prisoners from violence at the hands of other prisoners." *Id.* at 833. To establish a violation of this right, Plaintiff must show that Defendant was deliberately indifferent to the Plaintiff's risk of injury. *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990); *McGhee v. Foltz*, 852 F.2d 876, 880–81 (6th Cir. 1988). While a prisoner does not need to prove that he has been the victim of an actual attack to bring a personal safety claim, he must at least establish that he reasonably fears such an attack. *Thompson v. Cnty. of Medina*, 29 F.3d 238, 242–43 (6th Cir. 1994) (holding that plaintiff has the minimal burden of "showing a sufficient inferential connection" between the alleged violation and inmate violence to "justify a reasonable fear for personal safety.").

Plaintiff claims that he feared for his life from gang members and that Defendants were aware of this and threatened to have him placed in the general population. Plaintiff also asserts that at one point he was placed in a general population unit, which had been designated as temporary segregation overflow. However, Plaintiff fails to allege any specific facts showing that he was ever in danger of being assaulted by other inmates, or that Defendants were aware of specific threats to Plaintiff from other prisoners. As noted above, conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Therefore, Plaintiff's failure to protect claims are properly dismissed.

### C.    Respondeat Superior

Plaintiff fails to allege that Defendants Rewerts, Nevins, Leonard, Sergeant Miller, Schutt, Howland, and Allen took any action against him, other than to suggest that these Defendants failed to adequately supervise their subordinates or respond to Plaintiff's complaints, kites, and

grievances. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee,* 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Plaintiff fails to allege any facts showing that Defendants Rewerts, Nevins, Leonard, Sergeant Miller, Schutt, Howland, and Allen encouraged or condoned the conduct of their subordinates, or authorized, approved or knowingly acquiesced in the conduct. Indeed, he fails to allege any facts at all about their conduct. His vague and conclusory allegations of supervisory responsibility are insufficient to demonstrate that Defendants were personally involved in the events surrounding Plaintiff's reclassification to administrative segregation. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Because Plaintiff's § 1983 claims against Defendants Rewerts, Nevins, Leonard, Sergeant Miller, Schutt, Howland, and Allen are premised on nothing more than respondeat superior liability, his action fails to state a claim against them.

### D.    Defendants London, Smith, Dean, Unknown Parties #1 and #2, Beecher, Fidler, Weist, Russell, and Schultz

The Court notes that Plaintiff fails to name Defendants London, Smith, Dean, Unknown Parties #1 and #2, Beecher, Fidler, Weist, Russell, and Schultz in the body of his complaint. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each

alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries"). Because Plaintiff's claims fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"), his complaint must be dismissed against Defendants London, Smith, Dean, Unknown Parties #1 and #2, Beecher, Fidler, Weist, Russell, and Schultz.

## <u>Conclusion</u>

The Court will grant Plaintiff leave to proceed *in forma pauperis*. Having conducted the review required by the PLRA, the Court determines that Defendants Rewerts, Williams, Blair, Nevins, London, Smith, Bowne, Fears, Ward, Leonard, Kaputska, Unknown Party #1, Sergeant Miller, Corrections Officer Miller, Dean, Unknown Party #2, Beecher, Schutt, Fidler, Howland, Gaiter, Allen, Wiest, Russell, and Schultz will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's Fourteenth Amendment due process claims. Plaintiff's Eighth Amendment excessive force claims against Defendants Cook, Rydahl, Walrath, Rayburn, Collins, and James, and his Eighth Amendment denial of medical care claims against Defendants Collins and Wight remain in the case.

An order consistent with this opinion will be entered.

Dated:   March 14, 2025                              /s/ Ray Kent
                                                     Ray Kent
                                                     United States Magistrate Judge